LYON *against* SUMMERS.

Though a promissory note, not payable to order, is not assignable so as to vest the legal interest in another person, yet the assignment of such note transfers the equitable title, which will be recognized both in a court of equity and in a court of law, and fully protected.

To give effect to this doctrine is the object of the statute of *May* 23rd, 1822, *c.* 12. *s.* 1.

To an action brought in the name of *A.*, against *B.*, on a promissory note made by *B.*, payable to *A.*, the defendant pleaded a *defeasance* given by *A.* to him simultaneously with the execution of the note, and as part of the

*Fairfield,*
June, 1829.

Lyon
*v.*
Summers.

transaction. The plaintiff replied, that soon after the giving of the note, he, for a full and valuable consideration, assigned and delivered it to *C.*, who gave immediate notice thereof to *B.*; that *C.* had ever since owned the note, and had instituted and prosecuted the suit thereon, in the name of *A.*, for *C's.* benefit exclusively; that *A.*, at the date of the note, was in low circumstances in point of property, much in debt, and destitute of pecuniary credit; that *A.* wished to obtain of *B.* his note, that *A.* might use it to pay his creditors, or to raise money, by the sale thereof, and made known his object to *B.*; that it was then agreed between *A.* and *B.*, *with a view to enable A. to commit a fraud on any person to whom he might put off the note, that A. should execute to B. the defeasance mentioned in the plea, that A. might retain it in his possession, and by means thereof, defeat any action which should thereafter be brought on such note, by any owner thereof, in A's. name.* This replication was traversed; on which issue was joined. On the trial, it was admitted, that the note was assigned by *A.*, who was a bankrupt, to *C.*, for its full value, of which due notice was given to *B.*; *C.* paying for it, partly in money, and partly by his own note to *B.*, which *B.* assigned to *D.* for its full value, both *C.* and *D.* being ignorant of any defeasance or condition to the first-mentioned note. The court instructed the jury, that if they should find, that it was agreed between *B.* and *A.*, when the note and defeasance were executed, *that the defeasance was not to be annexed to the note, but to be kept by B., so that the note might appear valid and unconditional, to enable A. to deceive and delay his creditors, by shewing the same to them,—or, with intent that A. should thereby be enabled to raise money thereon, by selling it to any person who might purchase it, and that thereafter the defeasance should be set up as a defence;* then the transaction was fraudulent, and the defeasance ought not to prevent a recovery on the note. The verdict was for the plaintiff. On a motion by the defendant for a new trial, embracing the preceding matters, and stating, that the plaintiff, on the trial, introduced testimony in support of both the propositions hypothetically stated in the charge, and claimed to have proved them, it was held, 1. That under the issue joined and the charge given, the verdict had established facts sufficient to warrant a recovery by the plaintiff; the great question in the case being, whether the defeasance was fraudulent, and that question being directly answered by the verdict; 2. that as the defendant, at the trial, made no objection to the evidence, on the ground of variance or irrelevancy, he could not avail himself of such objection on this motion.

On a recovery by the plaintiff, in such case, the proper rule of damages, is, the amount of the note in suit and interest; the defendant, who was a party to the fraud, not being entitled to any deduction, on the ground, that *C.*, when sued on his note by *D.*, in the defendant's name, might avoid it.

THIS was an action on a promissory note, made by *Stephen Summers*, dated the 2d day of *November*, 1824, for 609, dollars, 59 cents, payable to *Andrew Lyon*, jun.

The defendant pleaded in bar the matters following. At the time of executing the note in suit, and as part of the transaction, the plaintiff executed and delivered to the defendant a writing in these words: " To all whom it may concern, Know

ye, that I, *Andrew Lyon*, jun. have, this day, received of *Stephen Summers* his note of hand, amounting to 609 dollars, 59 cents, which is the amount of an execution recovered against *Isaac Wakelee*, jun. before the superior court, holden at *Danbury*, on the fourth *Tuesday* of *September*, 1822, in my favour; and provided said *Isaac Wakelee*, jun. shall not recover a judgment and execution in a suit which shall hereafter be commenced against *Abel Hall*, for the amount of said execution, then the aforesaid *Summers'* note shall be void, and not collectable by law : And I also further covenant and agree with said *Summers,* his heirs and assigns, that provided the aforesaid judgment and execution shall be recovered against said *Hall,* then he shall pay to me 350 dollars, with interest, of the above note, and the remainder shall be void, and not collectable by law. Given under my hand, at *Weston, November* 2d, 1824.

*Andrew Lyon,* jun."

In *November*, 1819, the plaintiff instituted an action on the case, by writ of attachment, against *Abel Hall, Benjamin Hall* and *Elijah Mosier*, for maliciously causing the plaintiff to be prosecuted for perjury, without probable cause, and, at the term of the superior court, in *September*, 1821, recovered judgment against *Benjamin Hall* and *Mosier*, for 300 dollars damages, and 190 dollars, 69 cents, costs; *Abel Hall* obtaining a verdict in his favour. *Isaac Wakelee* jun., having given bail for *Benjamin Hall*, who absconded, was subjected, on a *scire-facias* at the suit of the plaintiff, by a judgment of the superior court, in *September*, 1822, in the sum of 519 dollars, 6 cents, damages, and 24 dollars, 25 cents, costs. These sums, with the interest thereon, and the costs of an execution, constituted the amount of the note in suit ; which note and execution are the same as those mentioned in the above recited writing. At the time this note was given, it was claimed that *Wakelee* gave special bail for *Benjamin Hall*, at the request of *Abel Hall*, and under an agreement that he, *Abel Hall*, would indemnify such bail ; and the parties then had it in contemplation to commence a suit, in the name of *Wakelee*, against *Abel Hall*, on such request and agreement ; which is the suit referred to in said writing. *Wakelee* soon afterwards brought his action against *Abel Hall*, founded on the liability of the latter to the former, for having given special bail, and in *December*, 1825, recovered, by the judgment of the superior court, 380 dollars, 6 cents, damages and ―――― costs. This is the only judgment,

which *Wakelee,* notwithstanding his utmost endeavours, has, at any time since the date of the note in suit, been able to recover against *Abel Hall.*

The plaintiff, in his replication, averred, That on the 11th of *November,* 1824, he, for a full and valuable consideration, sold and assigned the note in suit to *Aaron Sanford,* jun., and delivered the same to him, who has ever since held and owned it as his property ; that said *Sanford* instituted, and now prosecutes, this action, in the name of the plaintiff, and for his, said *Sanford's,* sole and exclusive benefit ; that the plaintiff, at the time of the making and delivery of said note, by the defendant, was in low circumstances in point of property, much in debt and destitute of pecuniary credit ; that in this situation, the plaintiff wished to obtain of the defendant his note, that he (the plaintiff) might use the same to pay his creditors, or to raise money, by the sale thereof, for the purpose of relieving himself under his pecuniary embarrassments, and made known his wishes on this subject to the defendant ; that it was then further agreed between the plaintiff and the defendant, with a view to enable the plaintiff to commit a fraud on any person to whom he might put off said note, that the plaintiff should execute to the defendant the writing recited in the plea, that the defendant might retain it in his possession, and by means thereof, defeat any action which should thereafter be brought on such note, by any owner thereof, in the name of the plaintiff, (the same not being negotiable,) and thereby defraud such owner of such sum of money as he should have given for the same. The replication averred, also, that immediately after the assignment of said note, by the plaintiff, to *Sanford,* he (*Sanford,*) gave notice thereof to the defendant.

This replication was traversed, by the defendant ; on which issue was joined.

On this issue, the cause was tried, at *Fairfield, December* term, 1827, before *Daggett,* J.

It was agreed, that the note in suit was, on the 11th of *November,* 1824, sold and assigned, for its full value, to *Aaron Sanford,* jun., who now prosecutes this suit, in conformity with the provisions of the statute, approved *May* 23rd, 1822 ; that he paid for it, by giving his own note, on interest, for 474 dollars, and the residue in money ; that the last-mentioned note was made payable to the present defendant, and was by him immediately thereafter sold and transferred to *John Sherwood,*

who still holds it ; that since such transfer, *Sanford* has paid to *Sherwood*, on the note, 165 dollars, and the residue remains unpaid ; that *Sanford* is a man of abundant property ; and that both he and *Sherwood* were ignorant of the defeasance set up in the plea, or that there was any condition to the note in suit. It was agreed, also, that the defendant was duly notified, on the 2nd of *December*, 1824, of the assignment of the note to *Sanford*.

The plaintiff claimed, and introduced testimony to prove, that when the note and defeasance were executed, it was fraudulently agreed between the defendant and *Lyon*, that the defeasance should not be annexed to or accompany the note, but should be kept by the defendant, and the note should appear to be a valid and unconditional note, with a view to enable *Lyon* to shew it to his creditors, and thereby satisfy them, that he should have something to pay them at some future time, and thus prevent them from pressing him, or taking any measures to collect their debts ; to enable him, also, to sell the note to any person, who might purchase it, and thereby raise money thereon ; and that the defeasance might be set up, when payment should be sought of the defendant. It was admitted, that *Lyon*, at the time when the note and defeasance were executed, was, and ever since has been, a bankrupt, and that well known to the defendant.

The defendant denied the facts thus alleged, and introduced testimony, tending to disprove them, and to establish the allegations in his plea. The defendant also insisted, as matter of law, that if the jury should find for the plaintiff, still he was not entitled to recover, except for what he had paid on the note in suit, *viz.* the difference between 474 dollars and 609 dollars, 59 cents, and the 165 dollars paid to *Sherwood*, the assignee of the note for 474 dollars ; because the balance due on the last-mentioned note could not be recovered out of *Sanford :* And the defendant prayed the court so to instruct the jury. *Sanford*, on the other hand, insisted, that as *Lyon* had obtained the full amount of the note of 609 dollars, 59 cents, from him and *Sherwood*, the verdict ought to be for the full amount of the note and interest.

The judge instructed the jury, That if they were satisfied from the testimony, that it was agreed between the defendant and *Lyon*, when the note and defeasance were executed, that the defeasance was not to be annexed to the note, but to be

*Fairfield,*
June, 1829.

Lyon
*v.*
Summers.

kept by the defendant, so that the note might appear valid and unconditional, to enable *Lyon* to deceive and delay his creditors, by shewing the same to them, or with intent that *Lyon* should thereby be enabled to raise money thereon, by selling it to any person who might purchase the same, and that thereafter the defeasance should be set up as a defence ; then the transaction was not honest, but was iniquitous and fraudulent, and the defeasance ought not to prevent a recovery on the note ; otherwise, the defendant would be entitled to a verdict: and if they should find for the plaintiff, the amount of the note in suit, with interest, ought to be the rule of damages.

The jury returned a verdict for the plaintiff, with damages to the amount of the note and interest ; and the defendant moved for a new trial.

*N. Smith,* in support of the motion, contended, 1. That the direction to the jury was incorrect, inasmuch as the cause was submitted to them on a point not in issue. The replication states a fraudulent agreement, that the defendant should execute the defeasance that the defendant might *retain it in his possession,* and by means thereof *defeat any action* which should thereafter be brought on the note. The agreement submitted to the jury is a very different one. In the first place, it is *in the alternative ;* and in the next place, it *differs,* in both branches of the alternative, from that stated in the replication. The agreement stated in the first branch of the alternative, is, that the defeasance was to be kept by the defendants, *to enable Lyon to deceive and delay his creditors, by shewing it to them.* In the other branch, the agreement is described or referred to, as having been made *with intent that Lyon should thereby be enabled to raise money* on the note. The replication is silent as to any *intent to deceive or delay Lyon's creditors,* or *to enable him to raise money* on the note. And here it is immaterial whether greater or less fraud might be effected, by means of the agreement put to the jury. It is sufficient that it is *not the agreement in issue.* The parties have a right to have the matter *in issue* tried, and not a matter *foreign* to the issue.

The correctness of the charge on this point, may be tested thus. If the plaintiff, in proof of the agreement stated in his replication, had offered evidence of the agreement specified in the charge ; and the defendant had objected to it, on the ground of a variance ; would not the court have rejected it on

that ground ? If there had been no other evidence, must not *Fairfield,*
the issue have been found against the plaintiff? And yet, accord- June, 1829.
ing to the charge, the plaintiff was entitled to, and had, a ver-
dict, on such evidence.

Lyon
*v.*
Summers.

2. That in the event of a verdict for the plaintiff, the rule
of damages must be the money paid by *Sanford.* This case
is to be regarded, under the statute, as a suit in equity, with
*Sanford, Lyon* and *Summers* before the court. The statute
protects *Sanford* to the amount of the injury, which he has
sustained ; and so far only. The same facts which establish
the plaintiff's right of recovery in this case, will constitute a de-
fence to a suit on the note for 474 dollars. Is it equitable, then,
that *Sanford* should be compensated for an injury which he
has not sustained, and from which he is fully protected ?

*Sherman* and *Osborne,* contra, contended, 1. That the mat-
ter in issue was put to the jury in an unexceptionable manner.
The plaintiff brings his action on a promissory note. The de-
fendant sets up a defeasance as a defence. The plaintiff re-
plies, that this defeasance was taken *fraudulently ;* on which
issue is joined. The *gravamen* of the replication is, that you,
the defendant, gave this note to a bankrupt, to carry into the
world, and cheat with ; and therefore your pocket defeasance
shall not protect you. The *fraud* is the substance. The
agreement is not to be proved *as such.* It is only one of the
circumstances attending the fraud, or at most the *instrument* of
effecting it. It is not necessary to prove it, with the same preci-
sion, as where it is described in the declaration and made the
foundation of the action. The charge submits to the jury sub-
stantially the same fraud, which is stated in the replication.
*Lyon* would, of course, have the custody and controul of the
note ; and might shew it to his creditors, to deceive them, or
sell it to raise money. It is a well founded presumption, that
the defendant *intended* the natural and probable consequences
of the power, with which he armed this bankrupt.

2. That if the objection has in itself any solidity, it comes *too
late.* The charge, unquestionably, required proof of a suffi-
cient fraud to avoid the defeasance. If the defendant meant
to avail himself of any variance between the fraud proved and
that alleged in the replication, he should have made the point
at the trial, either by objecting to the evidence before it went
to the jury, or by praying the court to instruct the jury to dis-
regard it.

*Fairfield,*
*June, 1829.*

Lyon
*v.*
Summers.

3. That if the plaintiff is entitled to recover any thing on the note in suit, the face of the note must be the rule of damages. *Sanford* paid for it its full value, in money and his own note. The court will grant relief commensurate with the injury sustained ; and this can be done only by giving the amount of the note and interest. The only objection to this, is, that *Sanford,* when sued on his note for 474 dollars, may avoid it, on the same ground on which he now avoids the defeasance in the defendant's hands. But can the defendant, a party to the fraud, interpose this objection? Can he avail himself thus of his own fraud? Shall he be permitted to say to *Sanford,* " I have cheated you in such a way, that you may get rid of your note ; and therefore, I will have the benefit of my own fraud, in this action ?" In *Montefiori* v. *Montefiori,* 1 *W. Bla.* 363. it was decided, that a note given fraudulently, to carry on a marriage treaty, was good against the maker, though given without consideration ; and Lord *Mansfield,* in delivering the opinion of the court, lays it down as a general proposition, that " no man shall set up his own iniquity as a defence, any more than as a cause of action." Before the court will allow the defence in question, they will look at the consequence ; and that will be, not merely to give the defendant the benefit of his own fraud, but to throw the loss on to *Sherwood,* an innocent purchaser. Will a court of equity do this ?

DAGGETT, J. It is not easy for any intelligent judge to look at this case, and not suspect, that this note was executed to enable the holder to practice a fraud. It is true, that the note is not negotiable, not being payable to order. By the rules of the common law, therefore, it cannot be assigned so as to vest the *legal* interest in any other person. Still the assignment of such a note, transfers the equitable title, which will be recognized in a court of equity, and also in a court of law, and fully protected. It must be sued in the name of the promisee, and is liable to all the equity which subsisted between the original parties. Thus far and no farther, it is a note to *Andrew Lyon,* jr. These principles are peculiar to our courts, and were considered and well illustrated, in the case of *Colbourn* v. *Rossiter,* 2 *Conn. Rep.* 503. Our late statute, *May* 1822, page 19. is designed to give effect to this doctrine.

It appeared, that on the 2d of *November,* 1824, the defendant made the note ;—that the promisee was then " in low circumstances in point of property, much in debt, and destitute of pe-

cuniary credit ;" that it was *Lyon's* wish to raise money on the <span style="float:right">*Fairfield,*</span>
note, to relieve himself from his embarrassments, and that <span style="float:right">June, 1829.</span>
known to the defendant ; that *Sanford*, by virtue of the statute
above cited, prosecutes the suit for his benefit, in the name of
*Lyon ;* and that both he and *Sherwood*, who took the note of
*Sanford* by assignment, were ignorant of the defeasance set up.
But a defeasance is set up ; and *that* with the facts pleaded, are
said to constitute a bar to the suit. Here, an honest mind na-
turally inquires, why was not the defeasance annexed to the
body of the note ? Why did it not assume the shape of a con-
dition ? It is difficult to answer the question, without impeach-
ing the integrity of the transaction.

<div style="float:right; text-align:center">Lyon<br>*v.*<br>Summers.</div>

But let us come nearer to the points made by the counsel
for the defendant. Here, it is urged, that the charge of the
judge does not present for the decision of the jury, the facts
put in issue by the pleadings. Let us examine this position.
The facts in issue are, substantially, whether *A. Lyon*, jr., being
in low circumstances and destitute of credit, and that well
known to the defendant, obtained this note to raise money and
relieve himself from embarrassment : and whether the defea-
sance was fraudulently executed, to the end that it might be
set up as a bar to a suit brought thereon, by any owner thereof.
The court finds, as a fact agreed by the parties, that *Lyon* was
a bankrupt, and the defendant knew it. The charge then pro-
ceeds, if the jury were satisfied from the testimony, that the
defeasance was not to be annexed to the note, but kept by the
defendant, so that *Lyon* might show an unconditional note to
his creditors, to deceive and delay them ; *or* with the intent
that he should raise money thereon, by a sale thereof ; and
that the defeasance should be set up to defeat a recovery on
the note ; then the transaction was not honest, but iniquitous ;
and in that case, their verdict should be for the plaintiff.

The strength of the objection lies in this, *viz.* that the charge
is in the disjunctive ;—either the note was made and the de-
feasance concealed to *deceive creditors, or* to enable *Lyon* to
*sell the note* as unconditional, and the defeasance to be set up
to prevent a recovery. Now, it is said, that by the pleadings,
the latter fact only was put in issue, *viz.* whether the note was
made unconditional to enable *Lyon* to *sell it,* and the jury
might not have found that fact consistent with the charge, but
simply the fact that it was made unconditional to *deceive and
delay creditors.*

*Fairfield,*
June, 1829.

Lyon
*v.*
Summers.

The answer to this objection is, that the defeasance was fraudulent and ought not to prevail, if *either* of the purposes was to be effected.    This is not denied in argument.

But this objection cannot now prevail, because this motion finds, that testimony was introduced, by the plaintiff, in support of *both* alternatives ; and the controversy between the parties was, whether *either* of them was proved.    To this testimony there was no objection.    If the defendant had supposed, that from the state of the pleadings, any testimony was irrelevant to the issue, he should have objected to it ; or, if casually intro- duced, he ought to have prayed the court to instruct the jury, that it did not bear on the issue.    This is an obvious course. But is it to be endured, that when parties have been fully heard upon a material point, (for it is conceded that each of the alternatives was material, and, if found affirmatively, sufficient to destroy the defeasance) they are at liberty, on the ground of some technical rule, to try their cause again ?    In my view of the charge and the issue, the jury have found a fact sufficient to warrant a recovery for the plaintiff.    Besides, to prevent such an evil as would be let in, by a practice of this kind, this Court adopted a rule, in 1826, (6 *Conn. Rep.* 327.) in these words : " In all motions for a new trial, the precise point *made by the party*, and the *precise opinion expressed by the court*, shall appear upon the face of the motion."    No point like that now made, was made in the court below.    Moreover, the great question was, whether the defeasance was fraudulent :—if so, it ought not to protect the defendant.    That question is direct- ly answered by the verdict.

Another ground alleged for a new trial, is, that the plaintiff is not entitled, on any principle, to recover the whole face of the note, but only the sum which he has paid ; but that the court instructed the jury, that if they should find for the plaintiff, they ought to find the whole amount of the note.    On a recur- rence to facts, it appears, that when *Sanford*, the real plaintiff, bought the note of *Lyon*, he paid him for it, by his own note, 474 dollars, and the residue in money ; and that he is a man of abundant property.    The note for 474 dollars was given to *A. Lyon,* jr., and by him immediately thereafter sold to *John Sherwood,* who *paid Lyon the full value thereof ;* and on the 26th of *November,* 1824, the real plaintiff paid on the note 165 dollars, both *Sanford* and *Sherwood being ignorant of the defeasance.*    The only reason alleged why *Sanford* should not

recover the whole sum promised in the note to be paid, is, that he will not be obliged to pay any part of what now remains due on the note, if sued therefor. Suppose he does, it then follows, that the loss is thrown from one innocent man (*Sanford*) on to another (*Sherwood*), and that too by him who gave the note, and fraudulently attempted to avail himself of a private defeasance, taken and pocketed by the defendant, who aided *Lyon* in practising the fraud. This cannot be law, nor equity.

*Fairfield,*
June, 1829.

Lyon
*v.*
Summers.

"In all cases," says Chief Baron *Comyns*, "where a man has a temporal loss or damage, by the wrong of another, he may have an action upon the case to be repaired in damages." That principle would authorise a recovery in favour of *Sherwood* against the defendant, for the money paid to *Lyon*, through the fraud of the defendant. If so, I see not why *Sanford* should not recover it of the defendant, in this action on the note ; and in that case, he doubtless must pay his note to *Sherwood*. In this way, complete justice is done.

It seems to me, also, that no principle of analogy will uphold this claim of the defendant. If *A.* were to sue *B.* for fraud in the sale of a horse, it would be a bald defence, that *A.* sold the horse for a full price to *C.*, even though *C.* took the horse at his own risque. If the fraud, in such case, was proved, there must be a recovery to the extent of the injury.

The motion for a new trial must be denied.

HOSMER, Ch. J. and WILLIAMS, J. were of the same opinion.

PETERS, J. having been absent when the case was argued, and BISSELL, J. having been of counsel in the cause, gave no opinion.

New trial not to be granted.