## BACKUS and another *against* DANFORTH.

A promissory note, payable to a particular person, and not to his order or to bearer, is not negotiable, and becomes due at the expiration of the time therein specified, without grace.

Where an officer's return on an execution was dated at *N. L.,* and stated, that at *N. L.,* the officer made demand, and payment being refused, he levied upon certain goods, posted them on the public sign-post in *N. L.,* and, at the expiration of the twenty days, sold them at auction, at a certain store in *Main*-street; it was held, 1. that it appeared, with sufficient certainty, that the goods were posted and sold in the society in which they were

*New-London,*
*July, 1834.*

Backus
*v.*
Danforth.

taken; and, 2. that it was not necessary to set out in the return the circumstances which authorized a sale at a place other than the sign-post; and consequently, that the return was good.

THIS was an action on the case against the defendant, a constable of the town of *New-London,* for not delivering certain goods by him attached in a suit brought by the plaintiffs against *Marvin Fargo ;* alleging, that the plaintiffs obtained judgment and execution in such suit; which execution was put into the hands of *Burrel Lathrop,* a deputy sheriff, who demanded of the defendant the goods so attached; and that the defendant refused to deliver them, &c.

The defendant pleaded the general issue; and the jury found a special verdict; by which it appeared, that the plaintiffs' writ against *Fargo* issued and was served, by the defendant, on the 20th of *September,* 1832, by attaching his goods, as alleged; that the debt was due; that judgment and execution were obtained; that demand of the goods attached was made, by *Lathrop,* of the defendant; that he refused to deliver them; and that the plaintiffs' debt remains unsatisfied. It also appeared, that the same goods had been previously attached, upon a writ issued and served, on the 14th of *September,* 1832, in favour of *Williams & Hull* against *Fargo,* founded on a promissory note of the tenor following : " Thirty days from date, for value received, I promise to pay *Williams & Hull,* at the *Union Bank,* five hundred and 19-100ths dollars. *New-London, August* 14, 1832. [Signed.] *Marvin Fargo."* That this writ was duly served, by the defendant, and returned; that *Williams & Hull* obtained judgment, took out execution and put it into the hands of the defendant to be executed; and that the defendant made his return thereon as follows : *" New-London, October, 4th,* 1832. Then, with this execution, at said *New-London,* I made demand at the last and usual place of abode of the debtor within named, of the debt, &c. [in usual form,] but he neglected and refused to pay said execution and costs. I therefore levied this execution on 29 pieces of calico, &c. [specifying sundry articles of cotton and woollen goods, chests of tea, &c.] as the property of the within named debtor, and drew a description of said goods and articles, and posted them on the public sign-post in said *New-London,* according to law, giving public notice that the aforesaid articles would be sold, by auction, on the 24th day of *Oc-*

*tober*, 1832, at the store formerly occupied by *Thomas Parsons*, in *Main*-street; and at the end of twenty days from and after said posting, *viz.* on the 24th day of *October*, 1832, the said debt or execution not having been paid, I repaired to said store, and caused a drum to be beat, to notify customers to come to the sale thereof; and did, then and there, sell said goods at auction, by beat of drum, to the following purchasers, [specifying the several articles sold, the names of the purchasers, and the sale prices,] amounting in the whole to the sum of 311 dollars, 49 cents, and applied said amount of sales towards said debt and execution. [Signed.] *John Danforth*, City Sheriff." It was further found, that in the defendant's return upon the plaintiffs' writ, he described said goods as having been previously attached, *viz.* on the 14th of *September*, in the suit of *Williams & Hull* against *Fargo*.

New-London,
July, 1834.

Backus
*v.*
Danforth.

The questions of law arising in the case were reserved for the advice of this court.

*J. W. Huntington* and *G. Perkins*, for the plaintiffs, contended, 1. That the note, on which the astachment in favour of *Williams & Hull* issued, being entitled to three days of grace, was not due when the property was attached; and therefore, all proceedings under it were void. *Shepard* v. *Hall*, 1 *Conn. Rep.* 329. 332. 1 *Sw. Dig.* 433. *Smith* v. *Kendall*, 6 *Term Rep.* 123. *Humphrey* v. *Case*, 8 *Conn. Rep.* 101. 104.

2. That the return of an officer, who has sold property under an execution, must shew a strict compliance with all the requisites of the statute directing proceedings in such cases. *Mitchell* v. *Kirtland*, 7 *Conn. Rep.* 229. 231. *Booth* v. *Booth*, 7 *Conn. Rep.* 350. 365. *Peck* v. *Wallace*, 9 *Conn. Rep.* 453. 456. *Williams* v. *Amory*, 14 *Mass. Rep.* 20. 28. *Wellington* v. *Gale*, 13 *Mass. Rep.* 483. 488. *Whitaker* v. *Sumner*, 7 *Pick.* 554.

3. That the officer's return, in this case, fails to shew a compliance with the requisites of the statute; because, in the first place, it does not appear, that the notice of sale was posted in the society in which the property was taken. *Stat.* 56. *tit.* 2. *s.* 74.

Secondly, it does not appear, that the property was sold at the public sign-post, or that any of the circumstances existed,

*New-London,*
*July, 1834.*

Backus
*v.*
Danforth.

which, under the statute, justify the officer in selling property under execution, at a place other than the public sign-post. *Stat. of* 1829. *c.* 11. *p.* 225.

Thirdly, it does not appear that the property was sold in the society where it was taken.   *Stat.* 56.

*Goddard* and *Brainard,* for the defendant, contended, 1. That the note in question was not entitled to grace ; and so was properly sued.   Grace belongs only to *negotiable* paper. Previous to 1812, no notes were negotiable in *Connecticut.* The statute of that year made notes, payable to *order* or to *bearer,* negotiable ; but left other notes precisely as they were before.   This note, then, is a specialty, and no more entitled to grace than a bond.   It must be declared on like a specialty, and is subject to the same limitation.   Our ancient law, uniform practice in this state, and the decisions of courts, all unite in support of the position, that a note of this description is not entitled to grace.   *Stat.* 360.  *tit.* 70. *s.* 1.—310. *tit.* 59. *s.* 2. *Shepard* v. *Hall,* 1 *Conn. Rep.* 329.   *Huntington* v. *Harvey,* 4 *Conn. Rep.* 124.   *Chaplin* v. *Canada,* 8 *Conn. Rep.* 286.

2. That at any rate, the officer is protected by the judgment, which, of course, found the process good and the attachment binding.

3. That the levy, posting, and sale were correct.

4. That if not, the officer is not answerable to the plaintiffs.

WILLIAMS, J.   The matters upon which the defendant relies for his justification, are the proceedings on the previous attachment ; and if those proceedings have been regular, he has made a good defence.

The plaintiffs claim, that they have not been regular ; because the writ was sued out before the note was due ; and because the return upon the execution is not such as the law requires, to protect the officer who makes it.

Under the first objection, the plaintiffs claim, that the note is one, which, by law, was entitled to three days of grace ; that this appeared on the face of the writ ; and that, therefore, the officer was bound to know, that the writ issued prematurely. To support this claim, the plaintiffs must show, either that this is a negotiable note, which is certainly entitled to grace ; or

they must show, that notes not negotiable are equally entitled to this privilege.

I had not supposed, that the former could now be considered as an open question.   But as it seems to have been questioned, in the *Common Pleas* in *England,* in two cases upon bills of exchange, and the court waived an opinion upon it ; (*Chamberlyn* v. *Delarive,* 2 *Wils.* 353.   *Dawkes* & ux. v. Lord *De Loraine,* 3 *Wils.* 207. 212. S. C. *Bla. Rep.* 782.) as it has been litigated in a neighbouring state ; and as it is now seriously questioned ; it demands consideration.

To determine as to notes, we must first inquire what is the law as to bills of exchange.   The earliest writer on the subject says : " The bill not being payable to a man, or his *assigns,* or *order,* an assignment of it will not avail ; but the money must be paid to the man himself." *Marius* 141.   In conformity to which is the opinion of *Holt,* Ch. J., in the case of *Hill* v. *Lewis,* 1 *Salk.* 132—3. where a bill was payable to the defendant without the words *or his order ;* " and the Chief Justice did agree, that the indorsement of this bill did not make him that drew the bill chargeable to the indorsee ; for the words *or to his order,* give authority to the plaintiffs to assign it, by indorsement ; and it is an agreement by the first drawer, that he would answer it to the assignee.   But the indorsement of a bill which has not the words *or to his order,* is good, or of the same effect, between the indorser and the indorsee, to make the indorser chargeable to the indorsee."   From the manner in which the terms *bill* and *note* are used in the old reports, I know, it is somewhat doubtful, whether that was a bill of exchange or a note ; but as that judge did not allow any effect to the word *order* in a note, I conclude it was a bill.   But if it was a note, the argument is equally applicable to this case.

In the case of *Dawkes* & ux. v. Lord *De Loraine,* above cited, *Gould,* J. says, he was present at the *Old Bailey,* when a person was indicted for forging a bill of exchange, neither payable to *order,* nor *for value received.*   All the aldermen then present at the *Old Bailey* said, it was no bill of exchange ; and the prisoner was acquitted.   He adds : "In a little book, called *Lex Mercatoria,* there are various precedents of bills of exchange, some with *value received,* and some without ; but there is not one not payable to *order.*" 3 *Wils.* 212.

*New-London,*
July, 1834.

Backus
*v.*
Danforth.

HARVARD LAW LIBRARY

*New-London,*
July, 1834.

Backus
*v.*
Danforth.

*Bayley* says, in his treatise : " That bills and notes are made assignable to *order*, or to *bearer*, or to specified individuals. A bill or note payable to *J. S.* or order, is payable to the order of *J. S.*, and is negotiable by indorsement." *Bailey on Bills*, 18. *chap.* 1. *sec.* 8.

*Selwyn* says : " The negotiability of a bill of exchange depends upon its being made payable to *A or order*, or to *A or bearer*." *Selw. N. P.* 326.

*Espinasse,* after laying down the same proposition, says : " If a bill is payable to a person only, by name, it is not negotiable ; as, by the terms of it, it is confined to such person only." *Esp. Dig.* 26.

And Judge *Swift* says : " To make a bill negotiable, it is indispensable that it should be drawn payable *to order*, *to assign, or bearer*, or to one's *own order*." *Sw. Ev.* 253. 1 *Sw. Dig.* 42.

This being the undeniable rule regarding bills of exchange, we might expect, that when a statute was made to put notes upon the same footing, the same words would be necessary to make them negotiable. The history of negotiable promissory notes is familiar. Lord *Holt* seemed to feel as if the admission of their negotiability would uproot the common law. He therefore resisted, with great vehemence, this attempt of the bankers. *Clerke* v. *Martin*, 2 *Ld. Raym.* 758. Three years after this decision, the statute of 3 and 4 of *Anne, c.* 9. was passed, by which it is provided, that, " Whereas it hath been held, that notes in writing, signed by the party who makes the same, whereby such party promises to pay unto any other person, or his order, any sum of money therein mentioned, are not assignable or indorsable over, within the custom of merchants, to any other person ; and that such person to whom the sum of money mentioned in such note is payable, cannot maintain an action, by the custom of merchants, against the person who first made and assigned the same ; and that any person to whom such note should be assigned, indorsed, or made paya·ble, could not, within the said custom of merchants, maintain any action upon such note against the person who first drew or signed the same : Therefore, to the intent to encourage trade and commerce, which will be much advanced, if such notes shall have the same effect as inland bills of exchange, and shall be negotiated in like manner: *Be it enacted*, that all notes

in writing, that shall be made and signed, &c. whereby he, she, or they promise to pay to another person or persons, body politic and corporate, his, her, or their order, or unto bearer, any sum of money mentioned in such note, shall be taken and construed to be, by virtue thereof, due and payable to any such person, &c. to whom the same is made payable; and also every such note, payable to any person or persons, &c. his, her, or their order, shall be assignable or indorsable over, in the same manner as inland bills of exchange are or may be, according to the custom of merchants; and that the person or persons, &c. to whom such sum of money is or shall be, by such note, made payable, shall and may maintain an action," &c.

*New-London,*
July, 1834.

Backus
*v.*
Danforth.

The time when this act was passed, the decisions which preceded it, the preamble of the statute, and the language of the enactment, all combine to show, that the object was to place promissory notes on the same footing as bills of exchange. If, therefore, bills, to be negotiable, must be payable to order, so must promissory notes be; and so it seems to be admitted, by the writers on this subject.

*Chitty* says, the words *order, assign,* or *bearer,* are the words ordinarily used to render the note negotiable; and unless the words *order* or *bearer,* or some other words authorizing the payee of the bill so to assign it, be inserted therein, it cannot be transferred so as to give the assignee a right of action against any one of the parties, except the indorser. *Chitt.* on *Bills,* 82. 125. *Evans,* in his essay on *Bills,* speaking of notes not payable to *order* or *bearer,* says, that these instruments are not negotiable. *Chap.* 26. *sect.* 1. And Chancellor *Kent* says, the instrument must be made payable to the payee, and to his *order,* or *assign,* or to *bearer,* to render it negotiable. If it want negotiable words, it cannot be transferred or negotiated, so as to enable the assignee to sue upon it, in his own name. 2 *Kent's Com.* 77. 2nd ed. And in the case of *Rex* v. *Box,* 6 *Taun.* 325. a prisoner was convicted of forging a note payable to *A* and *B,* stewardesses of a certain unincorporated society, or their *successors;* and it was adjudged, that though this note could not enure to the successors, and *was not negotiable,* the conviction was good. The fact, too, that a short time after the case of *Brown* v. *Harraden,* 4 *Term Rep.* 148. the same court should have permitted the same

*New-London,*
*July, 1834.*

Backus
*v.*
Danforth.

question to be argued in case of a note not payable to order, and that in the latter case, no claim was made by counsel, or by the court, that this note was negotiable, satisfies my mind, that this question was at that time entirely at rest, if it ever was a question in *England.* In one of our sister states, however, this precise point has been made and decided, in conformity to what, so far as I know, have been the uniform opinions in this state. *Gerard* v. *La Coste* & al. 1 *Dal.* 194. *Barriere* v. *Nairac,* 2 *Dal.* 249.

In this state, all notes, until the year 1812, were considered as specialties. Then a statute was passed, similar to the statute of *Anne,* as to the negotiability of certain notes. That statute has never been considered as affecting notes of this description. In *Lyon* v. *Summers,* 7 *Conn. Rep.* 399. 406. *Daggett,* J. says: "It is true, that the note is not negotiable, *not being payable to order."* In the same manner was such a note held, in *Huntington* v. *Harvey,* 4 *Conn. Rep.* 124. 128.

That notes of this description, therefore, are not negotiable, cannot admit of a doubt.

But it is said, that although they are not negotiable, still they are entitled to days of grace. So it was held, by Lord *Kenyon,* in the case of *Smith* v. *Kendal,* 1 *Esp. Rep.* 231. And this opinion was confirmed, by the court of *King's Bench ;* (6 *Term Rep.* 123.) and must now be considered the settled law of that country. It seems, also, to have been adopted, in the state of *New-York,* in conformity with this precedent. *Downing* v. *Backenstoes,* 3 *Caines* 137. *The Goshen and Minisink Turnpike Road* v. *Hurtin,* 9 *Johns. Rep.* 217. *The Dutchess Cotton Manufactory* v. *Davis,* 14 *Johns. Rep.* 238. 244. And if authority merely is to govern us, we should so decide. But the manner in which the *English* judge begins his opinion, is enough to make us hesitate in adopting it. " Were this," says he, " *res integra,* and there was no decision upon the subject, there would be a great deal of weight in the defendant's objections." The authorities cited in the argument, and the case relied upon by his lordship, only go to prove, that although the note is not payable to order or bearer, yet it is a note within the statute, upon which the *payee,* not the indorsee, may maintain a suit. Such was the case relied upon of *Burchell,* adm'r, v. *Slocock,* 2 *Ld. Raym.* 1545. Now, if

*New-London,*
July, 1834.

Backus
*v.*
Danforth.

the fact that such notes may be declared upon as subsisting instruments, proves, that they are entitled to days of grace, then our notes have always been entitled to that privilege ; because they have always been so declared upon.

But I have never been able to discover what there was in the statute of *Anne* affecting any notes, except those which it made negotiable. The evil complained of, in the preamble, is, that it has been held, that certain notes were not assignable, &c. To relieve from this embarrassment, and "to the intent to encourage trade and commerce, which will be much advanced, if *such notes* shall have the same effect as inland bills of exchange, and be negotiated in like manner." The evil, then, to be redressed, was holding certain notes not to be negotiable ; and the relief granted was, to make them negotiable. The statute seems to me to be conversant about such notes, and no other ; and I have never been able to find the clause in that statute applicable to any notes, except those thus rendered assignable or negotiable. If so, and these notes are not negotiable, then, of course, they are no more entitled to grace since the statute of *Anne* than before. Our own statute, stripped of the verbosity of the *English* statute, will serve to show at least what our legislature intended. " *Be it enacted*, that all promissory notes, duly executed, to the amount of thirty-five dollars, or more, for the payment of money only, and made payable to any person or persons, or his, her or their order, or to the bearer, shall be assignable and negotiable, according to the custom of merchants and the law relating to inland bills of exchange." This contains the substance of that part of the statute of *Anne*, changing the character of promissory notes ; and this is conversant only about those notes, which, under this statute, are to become negotiable ; and I can see nothing more in the statute of *Anne*.

Lord *Kenyon*, instead of deriving support to his opinion from the statute, goes on to remark, that he finds the merchants in *London* allow three days of grace on notes like the present. Though the opinion of merchants would not govern this Court, it would be dangerous now to shake that practice, which is warranted by a solemn decision of this Court, by any speculative reasoning on the subject. 6 *Term Rep.* 125. None of these reasons operate here. We have no decision upon the subject. We are not informed of any practice upon the subject ; and we

*New-London,*
*July, 1834.*

Backus
*v.*
Danforth.

are not aware of any danger to arise from such a decision. It is certainly desirable, that there should be a uniformity of practice upon mercantile subjects, in the commercial world. Yet when we are upon a construction of a statute, we are not at liberty to extend its provisions, merely because uniformity is desirable.

When this statute has been before our courts, it has been considered as applicable only to negotiable securities. Thus, in *Norton* v. *Lewis,* 2 *Conn. Rep.* 478., where it was decided, that *negotiable* notes were, under that statute, entitled to grace, *Swift,* Ch. J. says : " When the statute made promissory notes assignable, it communicated to them all the properties of negotiable instruments. As these are entitled to days of grace, it follows, of course, that notes made assignable by statute, must be entitled to days of grace." And *Hosmer,* J. says : " I have no doubt, that days of grace must be allowed on a *negotiable* promissory note." And when it is considered, that at the time of making that act, notes were considered as *specialties ;* that we yet declare upon them as such ; that they are subject to the same statute of limitations ; I can see no reason for extending that statute to a class of notes not embraced in its letter, and, as I believe, not included within its intent.

There are, and ever must be, broad distinctions between notes not negotiable, and those that are negotiable. This, as to the time of payment, seems to be one of them. How a note payable at sixty days, shall be held not to be due until sixty-three days have elapsed, except from usage or statute, I do not know. The statute, it has been shown, does not reach it. No evidence of usage has been adduced. The consequence is, that this note must be considered as due at the time specified by the parties ; and, of course, not entitled to days of grace.

It is also objected to this defence, that the officer's return does not show, that the goods were posted or sold in the society in which they were taken.

The return is dated at *New-London.* It states, that at *New-London* the officer made demand, and levied upon certain goods, and posted them on the sign-post in *New-London.* The officer has made his return just as if there was but one society in *New-London.* He posted on *the* sign-post in *New-London.* This seems to imply, that there is but *one ;* and are we to presume, in order to defeat this return, that there is

more than one ?   We know, in fact, that some of our towns compose one society ; and some contain several.   It would be going very far, to hold, that because some towns have more than one society, *New-London* is one of them.   If there were more than one, and that appeared to the Court, there would be some foundation for this objection.   But certainty to a reasona ble intent, is all that is to be required ; and so we decided in *Picket* v. *Allen,* 10 *Conn. Rep.* 146.   This objection, therefore, cannot prevail.

*New-London,*
July, 1834.

Backus
*v.*
Danforth.

Similar remarks are applicable to the claim, that it does not appear, that the goods were sold in the society.   The sale, it seems, was made in *Main-street, New-London ;* and, unless we are to presume, that there is more than one society in that town, there can be no difficulty on this point.

The plaintiffs further claim, that the officer is bound to set out the circumstances which entitle him to sell these goods at a place other than the sign-post.

By the general law, sales are to be made at the public sign-post.   By a recent statute, whenever the property cannot be removed to the public sign-post, without great injury or expense, or which cannot be sold there, without great inconvenience or injury from exposure to the weather, such officer may, in his advertisement, designate some other place in the society. 2 *Stat.* 225. *Sess.* 1829. *c.* ii. *s.* 1.   Upon this statute, it is to be observed, in the first place, that the officer may sell at the post, or another place, under certain circumstances.   Whether these circumstances exist, he is, in the first place, to judge ; and as he can change the place only when they do exist, the fact of such change seems to me sufficiently to show, that, in his opinion, those facts have occurred, or that necessity did exist. Whether such circumstances do exist or not, is always a question, which may be examined, whether the officer return his opinion or not.   Besides, many cases exist, where such an opinion must not only be useless, but ludicrous.   Suppose a ship were taken on execution, shall the officer's return be held void, because he omitted to state, in his return, that as it would have been very inconvenient or expensive to drag it to the public sign-post, he sold it at the wharf ?   And in this case, when dry goods and teas were to be sold, is any thing valuable added to the re-turn, by setting out, that there is great inconvenience or injury

*New-London,*
*July, 1834.*

Backus
*v.*
Danforth.

arising to such property from exposure to the weather, in the open street ?

Without giving any opinion upon the other answers to the plaintiffs' objections to this return, I am of opinion, that the facts found, justify the officer ; and that the Superior Court should be advised to render judgment for the defendant.

The other Judges were of the same opinion, except PETERS, J., who was absent.

Judgment for defendant.