*New-Haven,*
July, 1835.

Parker
*v.*
Redfield.

---

## Torry *against* Holmes and another.

*A,* a manufacturer in this state, desirous of procuring brass and machinery for his manufacturing establishment, and intending to go to *England* for that purpose, negotiated through *C* and *D,* commission merchants in *New-York,* with *B,* a merchant residing there, who had a mercantile establishment in *England,* conducted by his agent *E,* for a credit to a certain amount. As a part of this negotiation, *C* and *D* addressed a note to *B,* stating that *A* was in *New-York,* about to embark for *England,* and added : " For him you will prepare letters that he may procure his machinery, brass, &c. and that it may be shipped to us. We want your letters this afternoon." *B* immediately sent *C* and *D* a letter, addressed to *E,* in *England,* introducing *A* to him, stating *A's* object, and adding: " Please to do all in your power to facilitate his business; and, for this purpose, you are hereby authorized to accept his drafts to the extent of 600*l.* sterling ; and ship the goods for which he may so draw, to Messrs. *C* and *D* of this city, forwarding invoice and bill of lading to them." With this letter, *A* proceeded

to *England*, and presented it to *E*, who, from time to time, on *A's* request, furnished him with goods and money to the amount of 379*l.* sterling, which were entered on the books of *E*, as furnished *to* or *for A*. Some months afterwards, entries of the same goods and money were made on the books of *B*, in *New-York*, to the debit of *C* and *D ;* and copies of such entries were sent to them for payment, who replied, that " as soon as they received the amount from *A*, they would hand it over to *B*." After the return of *A*, he remitted to *C* and *D* 3000 dollars, to be applied to the payment of such advances ; but *C* and *D* failed, and never paid over to *B* any part of the money so remitted. In *assumpsit* by *B* against *A*, it was held, 1. That the letter of *B*, addressed to *E*, was *a letter of credit*, in the ordinary acceptation of that term ; 2. That for the advances made under it, *A* was *prima facie* liable as the principal debtor, unless it appeared from other evidence, that the credit was in fact given to *C* and *D ;* 3. That the entries on the books of *B* to *C* and *D*, with the presentment to them for payment, and their reply, did not furnish *conclusive* evidence, that the credit was given to *C* and *D* alone, as original debtors : 4. That upon the facts in the case, *C* and *D* were not, by law, constituted the agents of *B* to receive the money due from *A*, so that the remittance made by *A* to *C* and *D*, on that account, should, of course, discharge *C* and *D* from all liability to *B ;* but the question whether an agency to receive the money was created, by the conduct and acts of the parties, was open, as a question of fact, to be passed upon by the jury.

A point of law not made and overruled, on the trial of the cause, is not a ground for a new trial.

THIS was an action of *assumpsit* for money lent and advanced ; for money paid, laid out and expended ; for money had and received, &c.

The cause was tried, at *New-Haven, August* term, 1834, before *Daggett*, Ch. J.

The plaintiff, during the year 1832, until the 12th of *July*, when he failed, and assigned his property for the benefit of his creditors, was transacting business in *New-York*, under the name of *Wm. Torry Jr. & Co.*, and in *Birmingham, England*, under the name of *A. W. Gillett ;* a person of that name, now deceased, having been a former partner of the plaintiff in both establishments. The latter establishment was conducted by *Henry E. Thomas*, as agent for the plaintiff. The defendants were manufacturers in company, under the firm of *Holmes & Hotchkiss*, at *Waterbury*, in this state ; and being desirous of procuring brass and machinery for their establishment, sent out the defendant, *Holmes*, to *England*, to purchase them.

The plaintiff claimed to have proved, that the defendants,

through *James & Caswell*, commission merchants in *New-York*, as their agents and sureties, negotiated with the plaintiff for a credit to *Holmes*, in *England*, to such an amount as might be required for his purpose.

*Holmes* having arrived in the city of *New-York*, and being about to take passage for *England*, *James & Caswell*, on the 23d of *March*, 1832, left, at the counting-room of the plaintiff, a note addressed to him in these words : " Mr. *Israel Holmes*, of the firm of *Holmes & Hotchkiss*, *Conn.*, is here, and will leave in the packet of to-morrow. For him you will prepare letters, that he may procure his machinery, brass, &c., and that it may be shipped to us. We want your letters this afternoon.                    Yours,

[signed]      <em>James & Caswell.</em>"

" Machinery may cost about $800 ; brass 500 to 1200 ; possibly other affairs 300 to 400.

Mr. *Torry*—23rd *March*."

After the reception of this note by the plaintiff, he prepared and sent to the counting-room of *James & Caswell*, for *Holmes*, a letter of credit, addressed to *Thomas*, the agent of the plaintiff, in *Birmingham*, in the following terms :

" <em>New-York, March</em> 23d, 1832.

Dear Sir,

Permit us to introduce to you Mr. *Israel Holmes*, of the firm of *Holmes & Hotchkiss*, who intends to visit *Birmingham*, and transact business relative to his manufacturing concerns here. It is his intention to examine and procure machinery, &c. Please do all in your power to facilitate his business ; and for this purpose, you are hereby authorized to accept his drafts to the extent of 600*l*. sterling ; and ship the goods, for which he may so draw, to Messrs. *James & Caswell* of this city, forwarding invoice and bill of lading to them.

Yours, respectfully,

<em>Wm. Torry Jr. & Co.</em>

Mr. *Henry E. Thomas, Birmingham*."

With this letter, *Holmes* proceeded to *England*, and presented it to *Thomas*, who, from time to time, on *Holmes's* request, furnished him with the cash and merchandize, and aided him, by other expenditures and services, specified in the plaintiff's bill of particulars exhibited on the trial. The goods

HARVARD LAW LIBRARY

New-Haven,
July, 1835.

Torry
v.
Holmes.

so purchased, to the amount of 379*l.* only, were shipped to *James & Caswell*, accompanied by invoices, as directed in the letter of credit. The cash received by *Holmes* was applied to the payment of his expences, passages for himself and workmen procured in *Engand* for the defendants' establishment, &c.; the charges of the plaintiff for furnishing such advances and facilities in *England* being according to the customary rates; no part of which has ever been repaid to the plaintiff. These advances were charged on the books of the plaintiff's establishment in *Birmingham* as " Cash paid *J. Holmes*"— " paid *Francis Smith* & Co. on account of *J. Holmes*"—" To shipping charges on goods for *Holmes & Hotchkiss*," &c.

In connection with these facts, the plaintiff exhibited other evidence, tending to prove, and claimed that he had proved, that the advances were all made on the credit of the defendants as principals; and that *James & Caswell* were sureties for them, so far as such advances had been made in conformity with their written request, and the letter of credit given in pursuance thereof.

The defendants, on the other hand, claimed to have proved, that the letter of credit was applied for and furnished, by the plaintiff, to *James & Caswell*, on their own credit, as principals, and not on the credit of the defendants; and that the advances in *England*, made to *Holmes*, were made upon the credit of *James & Caswell*, and that the defendants became indebted for them to *James & Caswell*, and not to the plaintiff.

It appeared, that on the 18th of *August*, and on the 8th of *September*, 1832, certain entries, exhibited on the trial, were made in the plaintiff's book in *New-York*, by the book-keeper then in the employment of the plaintiff's assignees; and that copies thereof were sent, by those assignees, to *James & Caswell* in *New-York*, for payment, who replied, that as soon as they received the amount from the defendants, they would immediately hand it over to said assignees. It further appeared, that on the 27th of *August*, 1832, *James & Caswell* addressed to the defendants, at *Waterbury*, a letter of the following tenor: " The balance of your goods will probably be here, in a day or two, and will claim our attention, by way of entry and forwarding. In the mean time, you will prepare us with

New-Haven,
July, 1835.

Torry
v.
Holmes.

the means of adjusting with Mr. *Torry ;* which will not be done, however, till the goods are in hand ; but this may be expected every day." Shortly afterwards, and before the failure of *James & Caswell*, the defendants remitted to them, at different times, cash to the amount of 3000 dollars, to be especially applied to the payment of the advances; but *James & Caswell* never paid the money to the plaintiff; nor was the plaintiff ever informed, until after the failure of *James & Caswell*, on the 8th of *October*, 1832, that such remittances had been made, by the defendants. There was no evidence that any communication had passed between the plaintiff or his assignees and the defendants, until the 9th of *October*, 1832, when the plaintiff's assignees gave notice to the defendants of the assignment; and that payment for said advances must be made only to them. Nor did it appear, that any other communication had passed between the plaintiff or his assignees and *James & Caswell*, from the time the advances were furnished until their failure ; or that *James & Caswell* had ever credited them to the plaintiff or his assignees, or rendered any account thereof to the defendants, as debtors to *James & Caswell*, until *February*, 1833. Nor was there any evidence that *James & Caswell* ever informed the defendants, that said bills were presented against them, (*James & Caswell*) as debtors to the plaintiff; or that they held themselves responsible for them as principals, until long after their failure.

The plaintiff exhibited the evidence of two respectable dealers in letters of credit and bills of exchange in the city of *New-York*, familiar with, and largely interested in the mercantile intercourse and business with the *United States* and *Great-Britain*, shewing, "That said letter of credit is drawn in the usual form, and that the established usage would justify the person giving it, or to whom it is addressed, and who gives credit on the faith thereof, in looking to the responsibility of the person who takes such letter of credit, and obtains the goods on credit under the same, as the person liable for any advances or purchases made on the faith of such letter."

The plaintiff thereupon insisted and claimed to the jury, that the defendants became original debtors to the plaintiff, by reason of the credit and advancements in *England* so furnished for their use ; and that they were still indebted to the

*New-Haven,*
*July, 1835.*

Torry
*v.*
Holmes.

plaintiff for them. This was denied, by the defendants, who contended, that the note and letter of credit, however they might be construed, did not preclude the jury from finding, that *James & Caswell* were the original debtors of the plaintiff, and bought of them the letter of credit, and were to be the only debtors of the plaintiff for the goods and money ; and that the jury ought to enquire and find, on weighing all the evidence before them, to whom the credit was given.

To this the plaintiff assented ; but also insisted, that for all the advances made to *Holmes* for the use of the defendants, under the letter of credit so given, by the plaintiff, on the written request of *James & Caswell*, the defendants were, *prima facie*, liable, as the principal debtors, unless it satisfactorily appeared from other evidence, that the credit was in fact given, as claimed by the defendants, to *James & Caswell.* So the court instructed the jury.

The defendants also insisted, that as the goods and money furnished to *Holmes* in *England*, were afterwards charged, on the books of the plaintiff in *New-York*, to *James & Caswell*, and payment requested, as before stated, it furnished conclusive evidence, that the credit was not given by the plaintiff to the defendants, as original debtors, and *James & Caswell*, as sureties, as claimed by the plaintiff, but to *James & Caswell* alone, as original debtors. If otherwise, the defendants further claimed, that the court should instruct the jury, that upon the facts proved and admitted, the plaintiff had constituted *James & Caswell* his agents to receive the money due for said advances ; and that the remittances made by the defendants, to *James & Caswell*, on that account, discharged the defendants from all liability to the plaintiff. The court did not so instruct the jury ; but left it to them to decide upon the evidence, in case they should find, that the defendants were the original debtors to the plaintiff for said advances, whether the plaintiff had so conducted as to constitute *James & Caswell* his agents to receive payment from the defendants, and thereby absolve them from liability to the plaintiff.

The jury found a verdict for the plaintiff ; and the defendants moved for a new trial for a mis-direction.

*Sherman* and *Bronson*, in support of the motion, contended,
1. That the application of *James & Caswell* to the plaintiff,

New-Haven,
July, 1835.

Torry
v.
Holmes.

and his letter to *Thomas,* his agent in *England,* did not furnish *prima facie* evidence bearing on the question of the original liability of the defendants. As a branch of this point, they insisted, that the letter was not a letter of credit, but a mere order, given by a merchant to his clerk, to afford facilities for obtaining goods. The defendants were not to receive, and did not receive, any goods of the plaintiff. The first delivery was to *James & Caswell.*

2. That the court ought to have instructed the jury, that the charge on the plaintiff's books to *James & Caswell,* with the other facts relating thereto, made them principal debtors.

In the first place, this was in exact conformity with their note : " It may be shipped to *us.* *We* want your letters," &c.

Secondly, *James & Caswell* were empowered, by the facts admitted, to receive the money from the defendants. The plaintiff had sent them for payment his account for the goods, which were all sent and charged to them ; and they told him they would pay as soon as they received the amount from the defendants. The plaintiff made no reply. This was in law an acquiescence in their receiving and paying ; and so the court should have told the jury.

Thirdly, the remittance, on the facts admitted, by law discharged the defendants ; and so the court should have charged the jury. *Paterson & al.* v. *Gandassequi,* 15 *East* 62. *Addison* v. *Gandassequi,* 4 *Taun.* 574.

Fourthly, the court submitted the *law* to the jury. The question submitted to them, was, " whether the plaintiff had so conducted as to constitute *James & Caswell* his agents to receive payment from the defendants, and thereby absolve them from liability to the plaintiff." The *facts* were principally admitted ; and there was little or no question about them.

*R. S. Baldwin* and *Kimberly,* contra, contended, 1. That the remittances made by the defendants to *James & Caswell,* and their receipt thereof, in the manner and under the circumstances stated in the motion, did not by law discharge the defendants from their original liability to the plaintiff.

In the first place, the plaintiff never constituted *James & Caswell* his agents to receive the money from the defendants ; and this the jury have found.

Secondly, the facts proved and admitted, as stated in the mo-

New-Haven,
July, 1835.

Torry
v.
Holmes.

tion, do not shew *an intention* on the part of the plaintiff to constitute *James & Caswell* his agents for that purpose.

Thirdly, *James & Caswell* did not understand, that they were the plaintiff's agents ; for they never credited the plaintiff the money received, nor exhibited any bill to the defendants *as debtors to James & Caswell*, until after their failure, the next year. Nor have they ever recognized any liability on their part, as original debtors.

Fourthly, the letter of the 27th of *August*, 1832, from *James & Caswell* to the defendants, shows, that they were not acting as the plaintiff's agents.

Fifthly, the defendants had no reason to suppose that *James & Caswell* were agents of the plaintiff; for they never were informed, that the bills had been so presented to *James & Caswell*.

Sixthly, the money was not, therefore, paid, by the defendants, to *James & Caswell, in consequence* of the charge, but pursuant to an *original* understanding between them.

Seventhly, the facts proved and admitted shew, that *James & Caswell* acted, *from the beginning*, as the agents of the defendants.

Eighthly, the whole was a matter of *fact*, upon which the jury have passed.

2. That the defendants were *prima facie* liable, as *principal debtors*, for all advances, made by the plaintiff to *Holmes*, under the letter of credit, which was given upon the written request of *James & Caswell*, as stated in the motion. Such, in the first place, is the fair construction of the writings. And secondly, as the goods were furnished, by the plaintiff, for the use of the defendants, either the defendants or *James & Caswell* were original debtors for them. But *James & Caswell* could not be so liable. 6 *Rand.* 509.

The opinion of the Court was delivered by HUNTINGTON, J.

Several exceptions are taken to the proceedings in the court below, on the trial of this cause, which are now to be examined. The defendants claim, that the judge at the circuit, omitted to charge the jury, on points made by them, and which were material ; and that the instructions which were given on other points, were erroneous.

1. The jury were informed, that for all the advances made

*New-Haven,*
July, 1835.

Torry
*v.*
Holmes.

to *Holmes,* for the use of the defendants, under the letter of credit given by the plaintiff, on the written request of *James & Caswell,* the defendants were *prima facie* liable as the principal debtors, unless it satisfactorily appeared, from the other evidence in the case, that the credit was in fact given, as claimed by the defendants, to *James & Caswell.* It is insisted, that this direction was erroneous ; that it proceeded upon a misconception of the legal nature of the written communication from the plaintiff, to *Thomas,* at *Birmingham ;* that this paper was treated as a letter of credit, and that the charge was founded upon this hypothesis ;—that it was not a letter of credit, nor in the nature of one, inasmuch as the plaintiff's house in *New- York,* and in *Birmingham,* though called by different names, consisted of the plaintiff alone ;—that the letter addressed to *Thomas,* was but an order, drawn by the plaintiff on his own agent, who had no credit to give, and who was bound to execute it.

We should feel constrained to say, (if the decision of the case rested upon it,) that the defendants are not at liberty to insist upon this objection, in this Court, even were it well founded. It has been repeatedly decided, by us, that upon a motion for a new trial, we will not allow points of law to be discussed, which were not made, or which were waived, in the court below. We adhere to these decisions. The rule which they establish, is a salutary one, essential to the preservation of the rights of parties, and to the due administration of justice. We refer to the rule adopted by this Court, in 1826, (6 *Conn. Rep.* 327.) and to the cases of *Lyon* v. *Summers,* 7 *Conn. Rep.* 399. *Russell* & al. v. *Stocking* & al. 8 *Conn. Rep.* 236. It appears to us, that the argument now addressed to us, is designed to obtain a second trial of a question of fact, rather than the revision of matter of law claimed and relied on by the defendants, at the trial. Throughout the whole motion, the letter of the plaintiff to his agent in *England,* is treated, *by both parties,* as *a letter of credit.* The plaintiff and defendants alike consider and insist upon it as such. Their respective claims were founded on this supposition. The defendants did not call the attention of the judge to this instrument, in any other view than as a letter of credit ; nor was he desired to distinguish it from an ordinary letter of credit, because the plaintiff's house in *England* and in *New- York,* was composed of one and the same in-

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1835.*

Torry
*v.*
Holmes.

dividual. On the contrary, they and the plaintiff united in giving to it the character, qualities and name of a letter of credit ; and in accordance with this view of its legal nature, it is to be presumed, that the plaintiff offered the testimony(which was received without objection,) of two respectable dealers in letters of credit and exchange in *New-York,* familiar with and largely interested in the mercantile intercourse and business transactions between the *United States* and *Great-Britain,* that said *letter of credit is drawn in the usual form,* and that the established usage would justify the person giving it, or to whom it is addressed, and who gives credit on the faith thereof, in looking to the responsibility of the person who takes *such letter of credit,* and obtains the goods or credit under the same, as the person liable for any advances or purchases made on the faith of such letter. From an inspection of the record in this case, we cannot doubt, that both parties concurred in the opinion, that this was a letter of credit, in the ordinary acceptation of that term, and that both consented and insisted, that the judge, at the trial, should so treat it. We think that we should not administer justice according to law, if we were to permit the defendants to except to a charge, which was made in conformity with the claims of both parties, as to the legal nature of the instrument, which now, for the first time, the defendants are anxious to controvert. It seems to us, that the view now sought to be taken of the letter of the plaintiff to his agent in *England,* has occurred to the defendants, since the finding of the jury against them on the matters of fact in controversy ; and that it would be a reproach to the law, to permit them, under the circumstances disclosed in the motion, to present it for our consideration. If by mistake, they took an incorrect view of it, at the trial, their remedy to correct that mistake must be presented in another form.

If, however, the objection now taken, was open to examination and revision, we should arrive at the same result, as to the correctness of the charge to the jury, founded upon it. We think, that whether it be considered as a proper letter of credit, or a mere order to afford the facilities which it directs the agent of the plaintiff to furnish, the opinion of the judge is sustained, by well settled principles and adjudicated cases. It was *received,* by one of the defendants, as a letter of credit ;— it was *used* as such, by him, for the benefit of himself and his co-de-

fendants; and all the advantages which it was contemplated
would result from it, to the defendants, in fact followed from it.
It had the precise effect designed by the parties, when it was written, delivered and received. It was taken, by *Holmes,* to the person to whom it was addressed, and by means of it, goods and money were furnished to him, to the amount which he desired. Whether, therefore, it be called by one name or another,—a letter of credit, or an order,—it was written to effect a single object; and it fully answered the purpose designed. The name by which it should be called, cannot alter its legal character, or give to it a different construction from what it would otherwise deserve. The motion states, that it was admitted, advances were made to one of the defendants, (*Holmes*) for the joint benefit of himself and partner, upon the credit of this letter or order: and it is a familiar principle, that in the absence of all evidence to the contrary, it is a legal presumption that the individual who purchases goods or borrows money of another, is the debtor for them, and becomes *prima facie* responsible for them. It is unnecessary to cite authorities in support of a doctrine so well established, and so consonant with justice and equity. In the case before us, the goods were purchased and the moneys advanced, at the request and for the benefit of the defendants. The note addressed by *James & Caswell* to the plaintiff, requests letters for *Holmes,* that *he* may procure *his* machinery. The letter of the plaintiff to *Thomas,* introduces *Holmes* to the latter, as one of the firm of *Holmes & Hotchkiss,* who is about to visit *Birmingham,* and *transact business* relative to *his* manufacturing concerns in the *United States*—that *he* intends to examine and procure machinery, and requesting *Thomas* to facilitate his business, and to accept *his* drafts to the extent specified. By means of this letter, the advances were made to *Holmes;* and we cannot doubt, that for such advances, upon this letter, he and his partner were, *prima facie,* liable. This is precisely the instruction of the court to the jury, on this point; and it was left to them, as a matter of fact, to find, whether, from the other evidence in the case, the credit was in fact given to *James & Caswell,* and not to the defendants. If they should so find, the presumption of the primary liability of the defendants, would be rebutted, and they would be entitled to a verdict. In no other way, consistently with principles of law or equity, could the respective

D LAW LIBRARY

*New-Haven,*
*July, 1835.*

Torry
*v.*
Holmes.

claims of the parties, arising out of the facts, have been presented to the jury.

It is, however, claimed, that the *prima facie* liability of the defendants, as principal debtors, is rebutted, by the direction, in the note of *James & Caswell* to the plaintiff, and in the letter of the plaintiff to his agent, at *Birmingham,* to forward the invoice of the goods and the bill of lading, to *James & Caswell.* We do not think this claim is well founded. Neither of these instruments furnishes the slightest evidence, that *James & Caswell* had any interest in these goods. The shipment to them, was not inconsistent with the liability of the defendants as principal debtors. It might, with propriety, have been made to them, as they were the sureties of the defendants for the advances made ; and an additional reason for adopting this course, is inferable from the facts, that *James & Caswell* were the agents of the defendants—they resided in *New-York,* the port at which the goods would arrive ; and the defendants living in the interior of *Connecticut,* would, from motives of convenience, desire that the goods should be consigned to some person residing at the port of delivery. Hence the peculiar fitness of the language used by *James & Caswell,* in their letter to the defendants of *August* 27, 1832. " The balance of *your* goods will probably be here in a day or two, and will claim our attention *by way of entry and forwarding.*"

The case of *Paterson* v. *Gandassequi,* 15 *East* 62. and that of *Addison* v. *Gandassequi,* 4 *Taunt.* 574. have been cited, by the defendants, as favouring the claim now under consideration. We have examined them, and are unable to discover, that they furnish any support to the defendants' case : And we refer to them, not so much for the purpose of pointing out the obvious distinctions between both of them, and the present case, as that it may appear we have not overlooked them, in our deliberations on this subject. In the case first cited, the court recognize a familiar principle, which does not relate to the point in question—which is, that when the credit is in fact given to an agent, with the knowledge that he is in truth but an agent, and acts for a known principal, resort cannot be had to the principal. The rule for a new trial, was made absolute, that the alleged facts, of knowledge by the plaintiffs that the defendant was the principal, and that the plaintiffs had elected to take the agent as their debtor, might, with more certainty,

*New-Haven,*
July, 1835.

Torry
*v.*
Holmes.

be ascertained. In the present case, the point in controversy was, whether credit was given to the defendants, or to *James & Caswell ;*—and that was left, as a matter of fact, to the jury. In the case last cited, it was proved, that the goods were bought, by the house of *Larrasabel & Co., on their own credit and account ;* and it was submitted to the jury, to say, whether they acted as brokers, or not ;—and the jury being of opinion that the goods were sold to them as principals, found a verdict for the defendant, which the court refused to disturb. In that case, the question of fact, in what character *Larrasabel & Co.* acted, whether as brokers merely, or as principals, was left to the jury, under all the circumstances, to determine. In the case before us, the question, whether the credit was in fact given to *James & Caswell*, was, in like manner, submitted to the jury, upon the whole evidence ;—and in each case, we think the question was properly left for their decision. So far as the cases to which our attention has been called, are applicable to the present case, we think they sustain the charge given to the jury, at the trial.

2. The defendants asked the court to instruct the jury, that as the goods and money furnished to *Holmes* in *England*, were afterwards charged on the books of the plaintiff in *New-York*, to *James & Caswell*, and payment requested, in the manner stated in the motion, it furnished *conclusive* evidence that the credit was not given by the plaintiff to the defendants, as original debtors, and *James & Caswell* as sureties, but to *James & Caswell* alone, as original debtors therefor. This instruction, the court refused to give ; and we think this refusal is justified, by well established principles. Indeed, the counsel for the defendants have not attempted, in this court, to support the claim for such an instruction. It was properly abandoned ;—for it is too clear to admit of argument, that those facts were open to explanation. They might all exist, and yet the circumstances connected with them, be such, as to rebut any inference of the existence of the principal fact designed to be drawn from them. Is is, however, urged, that they made *James & Caswell, prima facie,* the principal debtors to the plaintiff, (if they expressed no dissent) without reference to the question, *who* were primarily liable ; and that the jury should have been so instructed. It is a sufficient answer to this claim, to say, that no such instruction was asked. " It surely can be

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1835.*

*Torry*
*v.*
*Holmes.*

no ground for a new trial, that the court below omitted to give directions to the jury, upon a point of law which might arise in the cause, where neither party requested it." We do not sit here, to support and sustain objections not made at the trial. " It is sufficient for us, that the court below gave no erroneous directions. Should any point fairly presented by the evidence, be deemed material, by either party, it is competent for him to demand the opinion of the court upon it. If he does not, it is waived." The claim now made, supposes it to be the duty of the court, to suggest points of law for the benefit of the parties, though never thought of by them, nor controverted. We do not think any such duty is imposed upon us, by the constitution and laws under which we act. " The court cannot be required to do more, in ordinary cases, than to express an opinion upon points which the parties themselves make at the trial." *Pennock* & al. v. *Dialogue,* 2 *Pet. U. S. Rep.* 15, 16. *Alsop* v. *Swathel* & al. 7 *Conn. Rep.* 500. It does not appear from the motion, that the plaintiff denied, that the facts stated as the ground of this exception, furnished *prima facie* evidence, that the credit was given to *James & Caswell,* as original debtors. We do not know, that there was any controversy between the parties, as to this matter. It may be, and such is the fair presumption, that the jury understood both parties to admit, that upon these facts, they were at liberty to find *James & Caswell* to have been the original debtors, unless they were satisfied, from other evidence in the case, that no such indebtedness existed. On what principle, can we be asked to send this cause to another jury, when there was no error in refusing to give the instruction asked ;—and when we are not informed, that the claim, as now made, was resisted, by the successful party ?

3. The court below, was further asked to instruct the jury, that upon the facts proved and admitted, as stated in the motion, the law was so. that the plaintiff had thereby constituted *James & Caswell, his agents,* to receive the money due for said advances ; and that the remittances made by the defendants to *James & Caswell,* on that account, discharged the defendants from all liability to the plaintiff. This instruction the court omitted to give, but left it to the jury to decide upon the evidence, in case they should find, that the defendants were the original debtors to the plaintiff for said advances, whether the

plaintiff had so conducted, as to constitute *James & Caswell* his agents to receive payment from the defendant, and thereby absolve them from liability to the plaintiff.

We do not perceive any error, in refusing to give the instruction which was asked, nor in the instruction which was given. The question to be decided was, whether an agency to receive the money, was created, by the conduct and acts of the parties. This was a mere matter of *fact*, depending upon all the evidence in the case ;—and as such, was properly left to the jury, who alone were authorized to find it. The only principle of *law* applicable to this part of the case, was this ; that if such agency was created and did exist, the payment to *James & Caswell*, for the advances made to the defendants, would discharge the defendants from all liability to the plaintiff :—and there does not appear to have been any controversy between the parties, as to the correctness of this principle, or of its application, if the facts found by the jury, should justify such application. The facts proved and admitted, did not furnish *conclusive* evidence, that *James & Caswell* were constituted the agents of the plaintiff, to receive payment for the advances. It was proper that they should be considered, by the jury ; and they were accordingly submitted to them, with the other evidence in the case, with the direction to find a verdict for the defendants, if, in view of the whole testimony, they should be satisfied, that such agency was created, and existed at the time when payment was made, by the defendants, to *James & Caswell*.

We are sensible, that the result to which we have arrived, will, probably, occasion a considerable loss to the defendants : and we have been told, that, in its operation, it will bear severely upon them. Whether the loss would be more severely felt by the defendants, than by the creditors of the plaintiff, we do not know, and cannot enquire. Courts of justice have no sympathies to indulge towards either party. The insolvency of *James & Caswell* may, (in the language of *Mansfield*, Ch. J. in *Addison* v. *Gandassequi*, 4 *Taunt.* 581.) "make an unfortunate difference in the case, as to the consequences to the defendants, but it will not alter the liability." The legal rights of the plaintiff cannot be varied, by the inability of *James & Caswell* to repay the amount received by them of the defendants. We must administer the law as we find it. In

this case, it is with the plaintiff; and we give him the benefit of it.

Our opinion is, that the proceedings in the court below, were perfectly correct; and therefore, the motion for a new trial must be denied.

The other Judges concurred in this opinion.

New trial not to be granted.